UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN PARSONS, | ) | Case No. 1:017CV 916 |
| | ) | |
| Plaintiff, | ) | Judge Kathleen M. O'Malley |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Karen Parsons brought this civil action pursuant to 42 U.S.C. §405(g) seeking judicial reversal of the Commissioner's denial of disability insurance benefits under the Social Security Act. Parson filed her application for benefits on April 20, 2004, claiming disability since September 8, 2000 due to pain and inability to walk (Tr. 64).[1] Benefits were denied at all stages of administrative review and upon the exhaustion of administrative remedies, Parsons initiated this action. As instructed, Parsons submitted a Statement of Errors and Fact Sheet and the Commissioner has responded. At issue is the ALJ's decision dated July 20, 2006, which stands as the final decision of the Commissioner (See 20 C.F.R. §404.981). The ALJ found Parson suffered severe impairment due to reflex sympathetic dystrophy (RSD) of the left foot controlled with periodic sympathetic lumbar nerve blocks and non-narcotic oral pain medication, small right ankle fracture, obesity and adjustment disorder with depressed mood. (Tr. 14). Based on medical and vocational evidence the ALJ found Parson could perform substantial gainful activity that was both sedentary and unskilled

---

[1] Parsons suffered a work-related injury when a dairy cow stepped on her left foot. (Tr. 347).

2

as information clerk, production worker and packager. (Tr. 19).    Parsons attacks the ALJ's credibility analysis with respect to her claims of disabling pain. She argues that the ALJ's consideration of her impairment due to RSD was not supported by substantial evidence as evidenced by the ALJ's lack of acknowledgment of SSR 03-2p, [2] and the ALJ  failed to assess her credibility using the factors underscored by SSR 96-7p.

The issue before this court in this case is whether there is substantial evidence in the record to support the Commissioner's decision.  Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantiality is based upon the record taken as a whole. *Barney v. Secretary of Health and Human Services*, 743 F.2d 448 (6th Cir. 1984); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984).  Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Secretary*, 893 F.2d 106, 108 (6th Cir. 1989); *Richardson*, 402 U.S. at 401.

> In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record 'taken as a whole.' *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and "must take into account whatever in the record fairly detracts from its weight." *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464-65, 95 L.Ed. 456 (1951)).  If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the

---

[2] SSR 03-2p, captioned,"Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome," 2003 WL 22399117.

3

reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

*Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th

Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire

whether the record could support a decision the other way").

*RSD and SSR 03-2p:*

Parsons begins by emphasizing that SSR 03-2p recognizes that her condition produces

chronic pain. In that regard, she is correct. RSD (also known as Complex Regional Pain Syndrome

(CRPS)), is defined as:

> RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual.
>
> 2003 WL 22399117 at * 1

However, most of SSR 03-2p is devoted to explaining the criteria, symptoms, and treatment

of RSD, and how an ALJ may determine whether a claimant's RSD is a properly documented,

medically determinable impairment. SSR 03-2p makes no exception for RSD and instructs that

4

administrative review of pain be conduct under SSR 96-7p and SSR 96-8p.[3] Consequently, the fact that the ALJ did not expressly cite SSR 03-2p does not mean that he did not properly weigh the medical evidence in evaluating the impact of Parsons's impairments. The ALJ accepted that Parson had RSD, that it was a severe impairment and that it affected her ability to perform work-related activities (Tr. 14, 16).

Parsons also points out that SSR 03-2p discusses that RSD may affect a person's mood, cognition, and behavior, including the ability to maintain attention and concentrate (Pl. Br. 3). The ALJ accepted the assessment of Dr. Richetta, Parsons' treating psychologist, that she developed an adjustment disorder as a result of her foot injury, which also affected her ability to perform work-related mental activities, and that she had moderate difficulty maintaining concentration, attention, and social functioning (Tr. 14-16). The ALJ reasonably weighed the medical evidence, and accepted the treating psychologist's finding that Parsons's depression was relatively mild and responded to treatment (Tr. 16, citing Tr. 253). The ALJ explained that his findings regarding Parsons's ability to perform work-related activities were consistent with the notes from her treating

---

[3]  In pertinent part SSR 03-2p reads:

For those cases in which the individual's impairment(s) does not meet or equal the listings, an assessment of RFC must be made, and adjudication must proceed to the fourth and, if necessary, the fifth step of the sequential evaluation process. Again, in determining RFC, all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities. Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. See SSR 96-7p, "Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements" and SSR 96-8p, "Titles II and XVI: "Assessing Residual Functional Capacity in Initial Claims."
2003 WL 22399117 at * 7

5

physicians who reported that she obtained pain relief from a series of sympathetic nerve blocks (Tr. 16, citing Tr. 151), the opinion of Dr. Neely, a consultative physician who concluded that Parsons had no limits in her ability to sit and could stand, walk, and carry for 30 minutes at a time (Tr. 16, citing Tr. 256), and with the results of the functional capacity examination, which concluded that Parsons retained the ability to perform light work (Tr. 18, citing Tr. 210–19). The ALJ also interpreted the physical therapist's assessment as consistent with sedentary work tolerances (Tr. 17, 216-17), as well as the consultative report from Dr. Lundeen (Tr. 17, citing Tr. 274-76). The ALJ emphasized as significant Dr. Hayek's statement that Parsons' RSD was controlled by periodic lumbar nerve blocks ( Tr. 17, citing Tr. 286).

Parsons' first argues only that the ALJ as wrong based on the evidence of record, but her argument ignores the evidence of a residual functional capacity for sedentary work contained in this record. Also the fact that the ALJ failed to expressly identify SSR 03-02p, but this is not significant since the degree of pain still must be ascertained under SSR 96-7p and SSR 96-8p (See note 3). The crux of this case is Parsons' second contention concerning credibility. Judicial resolution turns on whether the ALJ's credibility assessment followed the correct procedure and was supported by substantial evidence.

*Credibility:*

Credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996);

6

*Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The rule is,

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *1.

The ALJ acknowledged SSR 96-7p and concluded that Parsons was limited to a partial range of sedentary work which would allow for sitting for six hours of a workday with standing and walking for 30 minute intervals for a total of 2 hours during a workday, and restrictions on use of her left leg. (Tr. 15, 360). Parsons argues that this issue received inadequate consideration because the ALJ misrepresented the extent of her activities when he evaluated her complaints of pain, "improperly" used her history of substance abuse to discredit her current symptoms and to cast doubt on her credibility, and ignored her attempt at further education, when she had to discontinue schooling in 2006. Parsons argues that her pain interfered with schooling, causing low grades and slowing her completion of requirements. Parsons explains that her pain medication causes drowsiness.

The format set forth in SSR 96-7p outlines that administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3).  See *Duncan v. Sec'y of Health & Human Services*,

7

801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under the two-prong pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. 1996 WL 374186 at *2

The regulatory considerations that follow to investigate subjective complaints of pain or other symptoms consist of:

1.   The claimant's daily activities;

2.   The location, duration, frequency, and intensity of pain;

3.   Precipitating and aggravating factors;

4.   The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

5.   Treatment, other than medication claimant has received for relief of pain; and

6.   Any other measures used to relieve pain (e.g. lying down or changing position).

7.   Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii). In addition, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

8

The ALJ noted daily activities including that Parsons drives three to four times weekly, that she also cooks, cleans, vacuums and that she attends her daughter's baseball games every other week. (Tr. 16). The game attended was actually basketball, but there was no misrepresentation. (See Tr. 348- 50). The ALJ did not misrepresent Parsons' daily activities.

The ALJ did discredit Parsons for "some tendency to misrepresent and evade" because she misinformed clinicians that she graduated high school when she later obtained a GED, and she tried to evade her substance abuse history by stating her nursing license had expired, but later reluctantly admitting at the administrative hearing that she lost her license due to substance abuse (Tr. 15-16). Parsons is correct these non-medical reasons have no place under SSR 96-7p and 20 C.F.R. §404.1529(c). Nonetheless, while no provision is made for non-medical reasons for discrediting Parsons under this ruling and regulation, these "tendencies" are included for determining the effect of pain on residual functional capacity under 20 C.F.R. §404.1545(e).[4] The ALJ's consideration of non-medical reasons to reject alleged disabling pain was a part of ascertaining Parsons' residual functional capacity and therefore was not "improper" under the Social Security disability regulations.

_____

[4]  20 C.F.R. §404.1545(e) reads in pertinent part:

... Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone; e.g., someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis. In assessing the total limiting effects of your impairment(s) and any related symptoms, *we will consider all of the medical and nonmedical evidence*, including the information described in § 404.1529(c) (emphasis supplied).

9

Finally, there is the issue of the effect of medication. Parsons' reference to side-effects due to her pharmaceutical regimen and her attempt at retraining was not simply another item in her medical history. She testified at the administrative hearing that Dr Hayek responded to her complaints of drowsiness interfering with her attempt at further schooling by discontinuing Zonegran, decreasing Neurontin, and increasing Topamax (Tr. 320). There was a five month period of readjustment from the end of 2004 through the beginning of 2005, but Parsons remained too slow in her studies and was dismissed from school on January 1, 2006 ( Tr. 318-19).

The ALJ selected a portion of  Dr. Hayek's January 26, 2004 report, which noted "her pain is fairly well managed with lumbar sympathetic block" (Tr. 16, 151), and portions of subsequent reports from Dr. Hayek indicating on February 22, 2005 that Parsons symptoms improved after the last spinal block and on November 29, 2005 that her symptoms were controlled with spinal blocks every five to six months (Tr. 17, 286, 298). However, Dr. Hayek also continued prescriptions for Neurontin and Elavil in addition to antidepressants,  Paxil, Amitriptyline, and muscle relaxant, Baclofen, at the end of 2005 (Tr. 281).

The ALJ's analysis implies that these other medications were unnecessary, and spinal blocks were all that were needed to control Parsons' pain. That is a medical judgment which is neither supported by Dr. Hayek's reports or by other substantial evidence in this record. The ALJ should have, but did not consider "the type, dosage, effectiveness, and side-effects of medication to alleviate

10

pain or other symptoms." Neurotin and Elavil are well-known for their side-effects.[5] The record

substantiates Parsons' claim of drowsiness that could impact her residual functional capacity.

Accordingly, the ALJ's decision, which became the final decision of the Commissioner contains

both findings which are not supported by the record and a lack of analysis of medication and their

side-effects on work capabilities.


Parsons argues for and award and calculation of disability benefits claiming the record is

complete and overwhelmingly establishes that her chronic pain is disabling. In this circuit, the

Commissioner's decision may be reversed and benefits awarded only when the Commissioner's

decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and

evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v.*

*Secretary*, 17 F.3d 171, 176 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985);

---

[5] "[Elavil] produces debilitating side effects, including drowsiness and dizziness. . . . . See *Woods v. McBride*, 430 F.3d 813, 818 (7th Cir.2005) (describing Elavil as "an antidepressant, psychotropic drug that causes drowsiness as a side effect"); *Paxhia v. Shmigel*, No. 85-CV-1299E, 1992 WL 206278, at *1, 1992 U.S. Dist. LEXIS 12361, at *2 (W.D.N.Y. July 27, 1992) (describing Elavil as "an anti-depressant medication with sedative side effects"); *Carrasquillo v. LeFevre*, No. 80 Civ. 996, 1982 U.S. Dist. LEXIS 12779, at *5 (S.D.N.Y. May 13, 1982) (describing Elavil as "an anti-depressive drug [which] may have side effects on certain patients, such as sleepiness, or over-excitement.")."

*Alexander v. Winthrop, Stimson, Putnam and Roberts Long Term Disability Coverage,* 497 F.Supp.2d 429, 436 (E.D.N.Y.,2007).

"Neurontin  is used in lower doses for treatment of pain. It is used to relieve the burning nerve pain that sometimes persists for months or even years after an attack of shingles. Side effects when taken for nerve pain may include accidental injury, constipation, diarrhea, dizziness, drowsiness, dry mouth, headache, infection, lack of muscular coordination, nausea, swelling in arms and legs, vomiting, weakness. If taken with certain other drugs (Maalox; Hydrocodone (Lortab, Vicodin); Naproxen; Morphine) the effects of either can be increased, decreased, or altered. Neurontin, available at http://www.healthsquare.com/newrx/NEU1289.HTM (last visited May 20, 2004)."

*Edwards v. Barnhart,* 319 F.Supp.2d 1283, 1285 (N.D.Ala.,2004).

11

and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983). Evidence of disability is neither overwhelming nor one-sided but unquestionably in this matter the decision fails to meet the requirements of SSR 96-7p. Parsons cannot ignore Dr. Neely's consultative residual functional capacity assessment nor the one from the state agency physicians. There is substantial evidence supporting sedentary work exertional capability.

However there was no consideration of the side-effects from Parsons' medication and whether her drowsiness would also hamper her ability to perform the sedentary jobs identified by the vocational expert. Essentially what was not explored by the ALJ is the question of sustainability:

> Residual functional capacity is defined as the 'maximum degree to which the individual retains the capacity for <u>sustained</u> performance of the physical-mental requirements of jobs.' 20 C.F.R. pt. 404, Subpt. P, App. 2 §200.00(c) (1989) (emphasis added). In determining a claimant's physical abilities, we must assess the severity of [claimant's] impairment(s) and determine [claimant's] residual functional capacity for work activity on a *regular and continuing basis*. 20 C.F.R. §404.1545(b) (1989) (emphasis added).

*Cohen v. Secretary*, 964 F.2d 524, 530 (6th Cir. 1992).

The ALJ's findings did not address this issue of Parsons' ability to perform sedentary work on a regular and continuing basis in light of the effects of medication for her RSD condition, and consequently the court lacks a determination or decision containing specific reasons for the discrediting Parsons, which is supported by the evidence in the case record. See SSR 96-7p, 1996 WL 374186 *1-2. The court's role is not to resolve conflicting evidence in the record or to re-examine the credibility of claimant's testimony. See *Foster v. Halter*, 279 F.3d 348,353 (6th Cir.

12

2001); *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987) (*per curiam*); *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Remand is, therefore, required to the Commissioner under the fourth sentence of 42 U.S.C. §405(g) to address this credibility issue with full scrutiny of the evidence regarding Parsons' alleged disabling pain, while applying the Commissioner's mandated procedure.

### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons the ALJ's decision is not supported by substantial evidence and it should be reversed and remanded under the fourth sentence of 42 U.S.C. §405(g) for reconsideration to address the credibility issue with full scrutiny of the evidence regarding Parsons' alleged disabling pain while applying the Commissioner's mandated procedure.

_____s/James S. Gallas_____<br>
United States Magistrate Judge

Dated:  August 12, 2008

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).